UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARNEL GRAHAM    *Plaintiff,*   v.   CAMDEN COUNTY BOARD OF COMMISSIONERS  Serve: Emeshe Arzon  County Attorney  520 Market St.  14th Flr., Courthouse  Camden, NJ 08102     *Defendant.* | CIVIL ACTION   Case No.: _____   **JURY TRIAL DEMANDED** |

# COMPLAINT

Comes now Plaintiff, Darnel Graham ("Off. Graham" or "Graham"), by and through undersigned counsel, and state as follows:

## INTRODUCTION

Darnel Graham is an employee of the Camden County Office of the Sheriff ("CCSO"), currently on indefinite suspension and verbally told on May 6, 2025 that he has been terminated from employment, and was stripped of his uniform and duty belt in front of his colleagues on that date. In 2023, he, along with two other minority officers, brought suit in this Court to challenge the discriminatory and retaliatory actions of their employer and their union, the New Jersey State Policemen's Benevolent Association ("PBA") and New Jersey State Policemen's Benevolent Association, Local 277 ("Local 277" or the "Union"), and their one-time supervisor, Sergeant

Michael Olson ("Sgt. Olson").  *See Womble, et al. v. Camden County Board of Commissioners, et al.*, No. 23-cv-03373 ("*Womble*" or "*Womble* Action").  All three litigants to the *Womble* Action are minorities in the CCSO which is dominated by white officers, even though the office serves a very diverse community.

On July 22, 2024, Graham was verbally told that an Internal Affairs investigation had been opened up against him concerning his June 13, 2024 deposition testimony in the *Womble* Action in which he truthfully testified that Sgt. Olson, a defendant in *Womble*, had made demeaning remarks in Graham's presence about another plaintiff in the *Womble* Action, Marcus Cuevas ("Plaintiff Cuevas").  This testimony conflicted with his July 2022 statement before Internal Affairs concerning an internal investigation into alleged misconduct by Olson, in which Graham stated that Olson did not say anything disparaging about Cuevas.  Graham explained in his June 2024 deposition testimony in *Womble* that he provided that statement to Internal Affairs in order to protect Olson, as at that time, Graham viewed Olson as a mentor and friend.  Despite the seemingly innocuous nature of this deposition testimony, and the fact that Graham was testifying truthfully at this deposition, Defendant's Camden County's Office of County Counsel (which is defending Camden County Board of Commissioners in the *Womble* Action) referred the matter to the Camden County's Prosecutor's Office, which in turn is prosecuting Graham over his truthful testimony.  All of this conduct is being orchestrated by Defendant in an effort to chill the *Womble* plaintiffs, including Graham, and other potential witnesses, from truthfully testifying in the *Womble* Action, and to retaliate against Graham for seeking redress in *Womble* for Defendant's Title VII and other statutory and common law violations.

In this action, Graham asserts claims against Defendant Camden County Board of Commissioners for a retaliation for exercising his First Amendment Rights pursuant to 42 U.S.C.

§ 1983, the New Jersey Civil Rights Act N.J Stat. § 10:6-1, the New Jersey Conscientious Employee Protection Act ("CEPA") N.J. Stat. § 34:19-2 *et seq*., New Jersey Law Against Discrimination, N.J. Stat. § 10:5-12(d), and common law abuse of process and intentional infliction of emotional distress.

## PARTIES

1. Off. Graham is a biracial African American and Latino male, and a resident of the State of New Jersey.

2. Off. Graham has been employed by Defendant since 2013. He is officially suspended without pay from CCSO, but was told by Sheriff Charles Bellingham that he had been terminated effective May 6, 2025.

3. Defendant Camden County Board of Commissioners was Plaintiff's employer and CCSO is the department in which Plaintiff worked.

## JURISDICTION & VENUE

4. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law and common law claims pursuant to 28 U.S.C. § 1367, because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

5. Venue is proper in this Court because all acts and omissions in controversy took place in New Jersey.

**FACTUAL BACKGROUND**

6. Graham first joined the CCSO in June of 2013, working in the Hall of Justice/Superior Court as Courtroom security, even before starting at the police academy. He left work as a Courtroom security to train at the academy, graduating in late 2013.

7. Following graduation, Graham returned to the Hall of Justice/Superior Court and continued to serve as Courtroom security, under the supervision of Captain Pasquale Curseo ("Cpt. Curseo").

8. Cpt. Curseo quickly recognized Graham's quick learning and leadership capabilities, and named him a Field Training Officer ("FTO"), responsible for training other officers in Courtroom Security responsibilities, despite his limited time as an officer.

9. Gramham suffered multiple instances of discrimination while working in Courtroom security.

10. On June 28, 2020 , Plaintiff Graham transferred to CCSO's Transportation unit, working the 6:00 a.m. to 6:00 p.m. shift, in the hope that he could work in a discriminatory-free environment.

11. Unfortunately, he was to eventually learn that he could not escape the racism endemic to CCSO by moving to the Transportation unit, which ultimately led to his joining the *Womble* lawsuit.

12. On June 20, 2023, Shannel Womble ("Plaintiff Womble") and Marcus Cuevas ("Plaintiff Cuevas") filed a lawsuit against Defendant Camden County Board of Commissions, and their state and local union, alleging, among other things, discrimination in the workplace.

13. Graham decided to join the *Womble* Action, and on October 13, 2023, an amended complaint was filed adding him as a plaintiff.

14. On June 13, 2024, Graham was deposed in *Womble*. During his deposition, he was shown a transcript of his statement during a July 12, 2022 Internal Affairs (IA) investigation into allegations of misconduct by Sgt. Olson.

15. Graham had a long-standing relationship with Sgt. Olson and at the time of the July 2022 Internal Affairs investigation, he viewed Olson as not only a mentor, but a friend. He also understood that in order to avoid retaliation by CCSO leadership, including from Sgt. Olson, he was required to "cover up and protect Sgt. Olson."

16. Consistent with this understanding, Graham stated at a July 12, 2022 Internal Affairs interview that Sgt. Olson did not say anything disparaging about Marcus Cuevas.

17. However, consistent with his allegations stated in the *Womble* Action, Graham testified at his June 2024 deposition that he, as a person of color, was a "token" and acted as a "shield" to cover for the racist conduct of Sgt. Olson and others in leadership at CCSO, and made false statements in the July 12, 2022 IA investigation interview to protect his supervisor, Sgt. Olson.

18. At his June 13, 2024 deposition, Graham testified that Sgt. Olson did indeed make demeaning remarks about Cuevas in Graham's presence.

19. Following this June 2024 deposition testimony, Defendant opened an investigation against Graham asserting that Graham may be subject to discipline, up to and including termination, because he allegedly provided false statements in the earlier internal investigation.

20. Upon information and belief, Krista Schmid, the attorney from the County's Office of County Counsel who deposed Graham, in an effort to chill Graham, Plaintiffs Womble and Cuevas, and other potential witnesses from truthfully testifying in the *Womble* Action, informed the County's Prosecutor's Office of Graham's June 13, 2024 deposition testimony, and following instruction from the Office of County Counsel, Defendant opened this disciplinary action against

5

Plaintiff, threatening termination for truthfully testifying about Sgt. Olson's conduct and the hostile work environment at CCSO.

21. At Graham's June 13, 2024 deposition, Krista Schmid expressly told Plaintiff that Defendant would "bleed you dry."

22. Unfortunately, Defendant was true to this word, and in early to mid-March 2025, escalated the charges over this small issue to criminal charges, including a charge of Hindering Apprehension or Prosecution – 3rd degree, pursuant to N.J.S.A. 2C:29-3(a), and Official Misconduct – 2nd degree, pursuant to N.J.S.A. 2C:30-2. These charges collectively include penalties of 5 to 10 year's imprisonment, forfeiture of public employment and fines.

23. This escalation was conducted before any interview or hearing had taken place.

24. On March 18, 2025, Defendant's Prosecutor's Office offered a pre-indictment offer letter requiring Graham to plead guilty to 3rd degree Hindering Apprehension or Prosecution (N.J.S.A. 2C:29-3(a)), which would result in termination of his employment, probation and fines.

25. The Prosecutor's Office threatened that should Graham not accept this plea deal, he would face both the 2nd degree offense and 3rd degree offense with a mandatory 5 year prison sentence without possibility of parole should he be convicted, pursuant to N.J.S.A. 2C:43-6.5 (which governs mandatory minimums for public corruption offenses).

26. Plaintiff refused this plea deal, and in response, on May 6, 2025, Graham was charged not with these offenses, but with 4th degree Obstructing the Administration of Law or Other Governmental Function, pursuant to N.J.S.A. 2C:29-1(a).

27. On that date, Graham was ordered to appear at Camden City Hall. There, he was suspended from his position as a Sheriff's Officer with CCSO, and, with Sheriff Charles Bellingham and Graham's peers present to maximize the humiliation exacted on Graham, was stripped of his

uniform and duty belt, told that he was terminated from CCSO, and barred from reentering the building, requiring a co-worker to retrieve his belongings from his locker.

28. On May 7, 2025, a separation letter was issued. All of this was performed without Graham being provided the opportunity of a hearing to defend himself.

29. On June 11, 2025, Plaintiff received a Final Notice of Disciplinary Action, falsely asserting that Plaintiff did not request a hearing; Plaintiff's attorney submitted an appeal and Defendant's Prosecutor's Office acknowledged receipt.

30. The June 11, 2025 Notice states that Plaintiff is on an indefinite suspension. The suspension is unpaid, and accordingly, Plaintiff is currently suffering severe financial hardship from the total loss of income due to Defendant's unlawful conduct.

31. Defendant has singled out Plaintiff for this treatment, and has not criminally charged CCSO officers who likewise make untrue statements to Internal Affairs. The crucial difference is that these similarly situated officers are not pursuing litigation against Defendant.

32. For example, Sgt. Olson was the subject of an Internal Affairs investigation charging him with secretly recording two civilian Records Support Technicians without their knowledge or consent. Defendant's IA investigation concluded that he had committed this offense, but worse, it found that he ignored supervisory calls, abandoned his post, interfered with an internal investigation, and most relevant here, violated several Internal Affairs policies, including truthfulness.

33. Unlike Defendant's actions against Plaintiff however, Sgt. Olson was not criminally charged for being untruthful in an IA investigation and subject to the humiliation and likely termination experienced by Plaintiff. Instead, Sgt. Olson received a 45-day suspension (later reduced to 30-days) and was permitted to retain his position with CCSO. He continues to be

employed by Defendant without fear of criminal prosecution for being untruthful to Internal Affairs.

34. As a result of Defendant's unlawful, malicious, retaliatory conduct, Plaintiff has suffered severe financial, reputational and emotional harm.

## CLAIMS FOR RELIEF

### COUNT I

*(Violation of 42 U.S.C. § § 1983;*
*Retaliation in Violation of the First Amendment)*

35. Plaintiff references and incorporates all of the assertions in the previous paragraphs as if fully restated herein.

36. Plaintiff is in a contractual relationship with Defendant Camden County Board of Commissioners, in which he is entitled to be free from retaliation for engaging in protected activity.

37. Defendant Camden County Board of Commissioners, acting under color of state law, deprived Plaintiff of his rights under the First Amendment to the United States Constitution by retaliating against him for engaging in protected speech.

38. Defendant Camden County Board of Commissioners, through CCSO and its agents, opened an investigation against Plaintiff following his truthful deposition testimony in the *Womble* Action, and Defendant's Prosecutor's Office threatened to charge Plaintiff with various crimes, and ultimately, on May 6, 2025, charged Plaintiff with 4th degree Obstructing the Administration of Law or Other Governmental Function, pursuant to N.J.S.A. 2C:29-1(a).

39. Because of his protected activity, Plaintiff is being subjected to a punitive Internal Affairs investigation and prosecution from Defendant's Prosecutor's Office related to his litigation of the *Womble* Action. In providing testimony that supports his claims, Defendant has retaliated against

him by asserting in the Internal Affairs investigation and criminal prosecution that despite his testimony that earlier statements made to Internal Affairs were made in an effort to "cover up and protect Sergeant Olson," and therefore were not true at the time, Defendant has charged him with crimes that have resulted in his suspension without pay and, at least verbally, his termination. In so doing, Defendant violates Plaintiff's First Amendment rights.

40. Further, Defendant Camden County Board of Commissioners is liable for the retaliation committed by CCSO and its agents for opening an Internal Affairs investigation and prosecution in an effort to retaliate against Plaintiff for filing the *Womble* Action and for his truthful testimony concerning the racist conduct of Sgt. Olson, racially hostile work environment, and racially disparate treatment the *Womble* Plaintiffs endure at CCSO, which is consistent with the allegations made by him and the other Plaintiffs in that complaint.

41. Plaintiff's speech was protected under the First Amendment as it involved a matter of public concern, and Plaintiff was speaking in his capacity as a litigant in the *Womble* Action and therefore as a private citizen.

42. Defendant's retaliatory actions would deter a person of ordinary firmness from engaging in protected speech.

43. Defendant's actions were intentional, malicious, and taken in bad faith for the purpose of retaliating against Plaintiff, and Defendant is attempting to use its retaliation against Plaintiff to interfere in the prosecution of the *Womble* Action by chilling Graham, Plaintiff Womble, Plaintiff Cuevas, and other potential witnesses from truthfully testifying and providing other evidence in support of their claims in the *Womble* Action.

44. As a direct and proximate cause of the consistent and ongoing retaliation to which Plaintiff is being subjected, he has suffered severe financial and reputational harm, mental and emotional anguish, as well as insomnia, anxiety, and depression.

45. Plaintiff seeks damages pursuant to Section 1983 for the retaliation to which he was subjected of not less than $1,000,000.00, as well as costs, fees, interest, and attorney's fees.

## COUNT II

### *(Violation of New Jersey Civil Rights Act (NJCRA), N.J. Stat. 10:6-1, et seq.)*

46. Plaintiff references and incorporates all of the assertions in the previous paragraphs as if fully restated herein.

47. The New Jersey Civil Rights Act provides that any person whose rights under the Constitution or laws of this State are interfered with by another acting under color of law may bring a civil action for damages and other relief.

48. Plaintiff is in a contractual relationship with Defendant Camden County Board of Commissioners, in which he is entitled to be free from retaliation for engaging in protected activity.

49. Plaintiff's truthful deposition testimony constituted speech protected by the New Jersey Constitution, Article I, Paragraph 6, and the First Amendment to the United States Constitution.

50. Defendant Camden County Board of Commissioners, through CCSO and its agents, opened an investigation against Plaintiff following his truthful deposition testimony in the *Womble* Action, and Defendant's Prosecutor's Office threatened to charge Plaintiff with various crimes, and ultimately, on May 6, 2025, charged Plaintiff with 4th degree Obstructing the Administration of Law or Other Governmental Function, pursuant to N.J.S.A. 2C:29-1(a).

51. Because of his protected activity, Plaintiff is being subjected to a punitive Internal Affairs investigation and prosecution from Defendant's Prosecutor's Office related to his litigation of the

*Womble* Action. In providing testimony that supports his claims, Defendant has retaliated against him by asserting in the Internal Affairs investigation and criminal prosecution that despite his testimony that earlier statements made to Internal Affairs were made in an effort to "cover up and protect Sergeant Olson," and therefore were not true at the time, Defendant has charged him with crimes that have resulted in his suspension without pay and, at least verbally, his termination. In doing so, Defendant violates free speech rights under the New Jersey Constitution and U.S. Constitution.

52. Further, Defendant Camden County Board of Commissioners is liable for the retaliation committed by CCSO and its agents for opening an Internal Affairs investigation and prosecution in an effort to retaliate against Plaintiff for filing the *Womble* Action and for his truthful testimony concerning the racist conduct of Sgt. Olson, racially hostile work environment, and racially disparate treatment the *Womble* Plaintiffs endure at CCSO, which is consistent with the allegations made by him and the other Plaintiffs in that complaint.

53. Plaintiff's speech was protected under the New Jersey Constitution and U.S. Constitution as it involved a matter of public concern, and Plaintiff was speaking in his capacity as a litigant in the *Womble* Action and therefore as a private citizen.

54. Defendant's retaliatory actions would deter a person of ordinary firmness from engaging in protected speech.

55. Defendant's actions were intentional, malicious, and taken in bad faith for the purpose of retaliating against Plaintiff, and Defendant is attempting to use its retaliation against Plaintiff to interfere in the prosecution of the *Womble* Action by chilling Graham, Plaintiff Womble, Plaintiff Cuevas, and other potential witnesses from truthfully testifying and providing other evidence in support of their claims in the *Womble* Action.

56. As a direct and proximate cause of the consistent and ongoing retaliation to which Plaintiff is being subjected, he has suffered and continues to suffer severe financial and reputational harm, mental and emotional anguish, as well as insomnia, anxiety, and depression.

57. Plaintiff seeks damages pursuant to the NJCRA for the retaliation to which he was subjected of not less than $1,000,000.00, as well as costs, fees, interest, and attorney's fees.

## COUNT III

***(Violation of New Jersey***
***Conscientious Employee Protection Act (CEPA),***
***N.J. Stat. § 34:19-1)***

58. Plaintiff references and incorporates all of the assertions in the previous paragraphs as if fully restated herein.

59. CEPA recognizes a claim for retaliation for whistle-blowing activity through the filing of complaints and testifying under oath about an employer's conduct that violates either a law, rule or regulation promulgated pursuant to law, or a clear mandate of public policy. As Plaintiff continues to litigate the *Womble* Action, Defendant Camden County Board of Commissioners continues to retaliate against him. Following his June 2024 deposition testimony in that Action, Defendant opened an investigation and prosecution against Plaintiff asserting that Plaintiff is subject to discipline, up to and including termination, a prison sentence, probation and fines, because he allegedly provided false statements in an earlier internal investigation of alleged misconduct by Sgt. Olson.

60. Upon information and belief, this punitive IA investigation and prosecution by Defendant's Prosecutor's Office was commenced because, consistent with his allegations stated in the *Womble* Action, Plaintiff testified at his June 13, 2024 deposition that he, as a person of color, was a "token" and acted as a "shield" to cover for the racist conduct of Sgt. Olson and others in leadership at

CCSO, and made false statements in a July 12, 2022 IA investigation to protect his supervisor, Sgt. Olson.

61. Specifically, and contrary to his statement made to an investigator in July of 2022, in his June 2024 deposition testimony in the *Womble* Action, Plaintiff Graham testified that, when shown his earlier statements in a July 2022 IA investigation, his statements to the IA investigator were untruthful in an effort to "cover up and protect Sergeant Olson," and consistent with the allegations in that Action, Plaintiff Graham testified that Defendant Olson indeed did make demeaning remarks about Plaintiff Cuevas. In filing this lawsuit and truthfully testifying at his deposition, Plaintiff Graham has engaged in protected activity and whistle-blowing pursuant to N.J. Stat. § 34:19-3, by exposing Sgt. Olson and CCSO's discriminatory conduct as alleged in the *Womble* complaint. Defendant's current disciplinary and prosecutory actions against him for doing so is connected to this protected activity.

62. Defendant further violates CEPA because its punitive disciplinary and prosecutory actions are an effort to chill Graham, Plaintiffs Womble and Cuevas, and other potential witnesses from truthfully testifying and presenting other evidence about Sgt. Olson's discriminatory conduct and the hostile work environment at CCSO in the *Womble* Action.

63. As a direct and proximate cause of Defendant's unlawful retaliation against Plaintiff for having engaged in protected activity, Plaintiff has suffered severe financial and reputational harm, mental and emotional anguish, as well as insomnia, anxiety, and depression.

64. Plaintiff seeks compensatory damages for this CEPA claim of not less than $1,000,000.00, plus costs, fees, interest, and attorney's fees.

## COUNT IV

### *(Abuse of Process)*

65. Plaintiff references and incorporates all of the assertions in the previous paragraphs as if fully restated herein.

66. As Plaintiff continues to litigate the *Womble* Action, Defendant Camden County Board of Commissioners continues to retaliate against him. Following his June 2024 deposition testimony in that Action, Defendant opened an investigation and prosecution against Plaintiff asserting that Plaintiff is subject to discipline, up to and including termination, a prison sentence, probation and fines, because he allegedly provided false statements in an earlier internal investigation of alleged misconduct by Sgt. Olson.

67. Upon information and belief, this punitive IA investigation and prosecution by Defendant's Prosecutor's Office was commenced because, consistent with his allegations stated in the *Womble* Action, Plaintiff testified at his June 13, 2024 deposition that he, as a person of color, was a "token" and acted as a "shield" to cover for the racist conduct of Sgt. Olson and others in leadership at CCSO, and made false statements in a July 12, 2022 IA investigation to protect his supervisor, Sgt. Olson.

68. Specifically, and contrary to his statement made to an investigator in July of 2022, in his June 2024 deposition testimony in the *Womble* Action, Plaintiff Graham testified that, when shown his earlier statements in a July 2022 IA investigation, his statements to the IA investigator were untruthful in an effort to "cover up and protect Sergeant Olson," and consistent with the allegations in that Action, Plaintiff Graham testified that Defendant Olson indeed did make demeaning remarks about Plaintiff Cuevas. In filing this lawsuit and truthfully testifying at his deposition, Plaintiff Graham has engaged in protected activity and whistle-blowing pursuant to N.J. Stat. §

34:19-3, by exposing Sgt. Olson and CCSO's discriminatory conduct as alleged in the *Womble* complaint. Defendant's current disciplinary and prosecutory actions against him for doing so is connected to this protected activity.

69. The initiation of the IA disciplinary action and criminal charges are not for any legitimate law enforcement purpose or to prosecute a bona fide crime, but instead were undertaken with an ulterior motive – to retaliate against Plaintiff for his truthful testimony, to intimidate and punish him for exercising his legal obligations and rights, and to chill Graham, Plaintiffs Womble and Cuevas, and other potential witnesses from truthfully testifying and presenting other evidence about Sgt. Olson's discriminatory conduct and the hostile work environment at CCSO in the *Womble* Action.

70. The disciplinary and criminal process was therefore used by Defendant for a purpose for which it was not designed: to punish, harass and retaliate against Plaintiff, rather than to seek justice or enforce the law.

71. Defendant's conduct constitutes an abuse of process under New Jersey law.

72. As a direct and proximate cause of Defendant's abuse of legal process, Plaintiff has suffered severe financial and reputational harm, mental and emotional anguish, as well as insomnia, anxiety, and depression.

73. Plaintiff seeks compensatory damages for this claim of not less than $1,000,000.00, plus costs, fees, interest, and attorney's fees.

## COUNT V

### *(Intentional Infliction of Emotional Distress)*

74. Plaintiff references and incorporates all of the assertions in the previous paragraphs as if fully restated herein.

75. Defendant's actions in initiating baseless disciplinary and criminal charges against Plaintiff, motivated by retaliation for his truthful deposition testimony, constitute extreme and outrageous conduct beyond the bounds of human decency.

76. Defendant intended to cause Plaintiff severe emotional distress, or acted in reckless disregard of the high probability that its conduct would cause such distress.

77. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered severe financial and reputational harm, mental and emotional anguish, as well as insomnia, anxiety, and depression.

78. Plaintiff seeks damages for this claim of not less than $1,000,000.00, as well as costs, fees, interest, and attorney's fees.

## COUNT VI

*(Violation of New Jersey Law Against Discrimination, N.J. Stat. § 10:5-12(d))*

79. Plaintiff references and incorporates all of the assertions in the previous paragraphs as if fully restated herein.

80. The New Jersey Law Against Discrimination prohibits any person or entity from taking reprisals against any individual because that person has opposed practices forbidden by the NJLAD or because the person has filed a complaint, testified, or assisted in any proceeding under the Act.

81. Plaintiff engaged in protected activity under the NJLAD by opposing unlawful discriminatory practices and testifying about discriminatory conduct.

82. In direct retaliation for Plaintiff's exercise of rights protected under the NJLAD, Defendant initiated baseless discipline and criminal charges against Plaintiff, seeking to punish, intimidate and harass him.

83. The retaliatory actions taken by Defendant were in violation of N.J.S.A. § 10:5-12(d).

84. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered severe financial and reputational harm, mental and emotional anguish, as well as insomnia, anxiety, and depression.

85. Plaintiff seeks damages for this claim of not less than $1,000,000.00, as well as costs, fees, interest, and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. All disciplinary and criminal charges against Plaintiff as outlined in this Complaint be dismissed;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

C. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for all fees and expenses, including attorney's fees and expenses, associated with defending himself against the disciplinary action and criminal charges outline herein;

D. Plaintiff is to be awarded punitive damages and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

E. Plaintiff is to be accorded other equitable and legal relief as the Court deems just,

proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

F. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and New Jersey state law.

G. Plaintiff is to be given a jury trial as demanded in the caption of the instant Complaint.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all claims so triable.

Respectfully submitted,

*/s/ Benjamin Folkman*
Benjamin Folkman, Esq.
Bar No. 000101984
FOLKMAN LAW OFFICES, PC
1949 Berlin Road, Suite 100
Cherry Hill, New Jersey 08003
(856) 354-9444
benfolkman@folkmanlaw.com

Pamela M. Keith (*pro hac vice pending*)
Scott M. Lempert
Bar No. 035281995
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW
Suite 600
Washington, DC 20001
(202) 800-0292
pamkeith@centerforemploymentjustice.com
scottlempert@centerforemploymentjustice.com

*Counsel for Plaintiff*